STATE OF NORTH CAROLINA v. JESSIE BROWN

No. 851SC1159

(Filed 15 April 1986)

1. **Homicide § 21.9— kicking unconscious victim—sufficiency of evidence of voluntary manslaughter**

     In a prosecution of defendant for voluntary manslaughter, evidence was sufficient to be submitted to the jury where it tended to show that the victim was kicked, stomped and beaten with various objects by a group of people; after the victim was unconscious, he was kicked about his chest and abdomen by defendant; and the victim died as a result of complications from the splitting of the pancreas which resulted from blows to the abdominal area.

2. **Criminal Law § 113.7— aiding and abetting—instruction improper**

     The trial court in a prosecution for voluntary manslaughter erred in instructing that the jury could convict defendant on the theory of aiding and abetting where there was no evidence that defendant acted as an aider and abettor to other persons in beating the victim, and all the evidence showed that defendant acted independently of the others in his assault on the victim.

APPEAL by defendant from *Griffin, William C., Judge.* Judgment entered 13 June 1985 in Superior Court, PASQUOTANK County. Heard in the Court of Appeals 7 April 1986.

Defendant was indicted for voluntary manslaughter in the death of William D. Stone. The evidence tended to show that defendant was among a group of people gathered at the Amusement Parlor in Elizabeth City. Shortly before midnight an altercation occurred. Defendant was not involved in this altercation. During the course of this altercation, the victim, William Stone, pulled a gun and shot into the ceiling. Several people began struggling with Stone in an attempt to take the gun away from him. Stone was wrestled to the floor where he proceeded to fire five or six more shots. For the next several minutes a group, variously estimated at between 6 and 15 people, kicked, stomped and struck Stone with various objects including chairs, pool cues and their feet. The defendant was not observed among this group of people.

Following the beating, Stone was left unconscious on the floor. After the beating, defendant was observed outside the Amusement Parlor with a bullet wound to his leg.

Police and rescue squad units arrived and started to transport the injured to area hospitals. Stone and defendant were placed in the same ambulance. Lieutenant W. O. Leary of the Elizabeth City Police Department testified that after Stone was placed in the ambulance with defendant, defendant got up and began kicking Stone about his chest and abdomen. Lt. Leary stated that he saw defendant kick the unconscious Stone three or four times before being pulled out of the ambulance by two officers and an ambulance attendant.

Stone was taken to a Norfolk hospital where he died nine days later. Dr. F. B. Preswella, the medical examiner, testified:

> Based on the autopsy I performed I formed an expert opinion satisfactory to myself as to the cause of William D. Stone's death. My opinion is that Mr. Stone died as a result of medical complications which resulted from the splitting of the pancreas which resulted from blows to the abdominal area. The actual medical complications are the pneumonia that I mentioned, which goes under a name of adult respiratory distress syndrome, in the failure of the organs, especially the liver and the kidney.

On cross-examination, the medical examiner gave the following testimony regarding the type of instrument which could have inflicted the blow which caused the fatal injury:

> It is my opinion that the type of blow was a blunt force injury, to a relaxed abdomen, in either a person who was asleep or unconscious, with a small surface area. It could be a kick, it could be as was suggested the end of a pool stick, the leg of a chair, or, again, a similar thing which is thrust in with force, but which is blunt. It does not penetrate, but it pushes the abdomen in.

> A stomp or a kick with the toe of a shoe could do it, if given the right angle and the ability to kick that way.

The jury convicted defendant of voluntary manslaughter. From a judgment sentencing him to the presumptive term of six years imprisonment, defendant appealed.

*Attorney General Lacy H. Thornburg, by Associate Attorney Kathryn L. Jones for the State.*

*John W. Halstead, Jr., for defendant appellant.*

MARTIN, Judge.

Defendant assigns error to the denial of his motion to dismiss and to the trial court's instructions to the jury. For error in the trial court's instructions to the jury, we must order a new trial.

[1] Defendant first contends that the court erred by denying his motion to dismiss at the close of all the evidence. He argues that there was insufficient evidence to establish that his acts were the proximate cause of Stone's death.

In ruling on a motion to dismiss, the trial court must determine whether the State has produced substantial evidence of each element of the offense and that defendant was the perpetrator. *State v. LeDuc,* 306 N.C. 62, 291 S.E. 2d 607 (1982). "The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. . . ." *State v. Powell,* 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980).

Voluntary manslaughter is the unlawful killing of a human being without malice, premeditation or deliberation. *State v. Brown,* 300 N.C. 731, 268 S.E. 2d 201 (1980). The State must produce evidence which is sufficient to show beyond a reasonable doubt that defendant's unlawful acts were the proximate cause of the victim's death. However, defendant's acts need not be the sole proximate cause of death. It is sufficient if defendant's "unlawful acts join and concur with other causes in producing" the victim's death. *State v. Cummings,* 46 N.C. App. 680, 683, 265 S.E. 2d 923, 926, *aff'd,* 301 N.C. 374, 271 S.E. 2d 277 (1980).

From the evidence presented at trial the jury could find that defendant's kicking the victim several times in the abdominal area caused or contributed to the victim's death. Thus, the trial court properly overruled defendant's motion to dismiss.

[2] The defendant next contends the court erred by giving the following instruction to the jury:

You must clearly understand that, if a person aids and abets in the commission of voluntary manslaughter or involuntary manslaughter, he is guilty of those crimes, either or both, just as if he had personally done all the acts necessary to constitute that crime.

Now, as to the defendant, Jesse Brown, I charge that for you to find Jesse Brown guilty of voluntary manslaughter or involuntary manslaughter because of aiding and abetting the State must prove from the evidence and beyond a reasonable doubt that voluntary manslaughter or involuntary manslaughter was committed by another person or other persons acting in concert, and, second, that the defendant, Jesse Brown knowingly advised, instigated, encouraged, or aided another or others acting in concert to commit voluntary manslaughter or involuntary manslaughter. However, a person is not guilty of the crime merely because he is present at the scene, even though he may silently approve of the crime or secretly intend to assist in its commission. To be guilty, he must aid and actively encourage the person committing the crime or in some way communicate to this person his intention to assist in its commission. So, I charge that if you find from the evidence and beyond a reasonable doubt that on or about October 14, 1984 that another person or others, either known or unknown, committed voluntary manslaughter, that is that another or others known or unknown, intentionally kicked, stomped or struck with a chair, pool cue or stick, William D. Stone, proximately causing William D. Stone's death, and that Jesse Brown by his conduct knowingly advised, instigated, encouraged or aided another or others either known or unknown, to commit voluntary manslaughter, it would be your duty to return a verdict of guilty of voluntary manslaughter. If you do not find the defendant Jesse Brown guilty of voluntary manslaughter by aiding and abetting that crime, or if you have a reasonable doubt as to one or more of those things, then it would be your duty to return a verdict of not guilty of voluntary manslaughter by reason of aiding and abetting. You must then determine whether the defendant Jesse Brown is guilty of involuntary manslaughter by aiding and abetting.

The defendant contends the foregoing instructions permitted the jury to convict him on the theory that he aided and abetted the other persons involved in the beating of Stone, a theory unsupported by the evidence. We agree. There is no evidence that defendant acted as an aider and abettor to other persons in beating Stone. All the evidence shows that defendant acted independently of the others in his assault on the victim. Thus, there was no basis in the evidence for the court to instruct the jury on the law of aiding and abetting. It is generally error, prejudicial to defendant, for the trial court to instruct the jury upon a theory of a defendant's guilt which is not supported by the evidence. *State v. Dammons*, 293 N.C. 263, 237 S.E. 2d 834 (1977). This error entitles defendant to a new trial.

In view of our decision, we deem it unnecessary to address defendant's remaining assignments of error.

New trial.

Chief Judge HEDRICK and Judge WELLS concur.