STROUD, Judge.
Defendant appeals from a judgment entered upon his conviction for breaking or entering a motor vehicle and his guilty plea to attaining habitual felon status. We find no error.
The State's evidence at trial establishes the following factual background. Officer Dwayne Diaz of the Greensboro Police Department conducted a routine patrol through a parking lot around 2:00 a.m. on 20 April 2013. During this patrol, Officer Diaz noticed an individual "halfway in and halfway out" of a Caprice automobile. The individual was wearing black clothing and had gold teeth. Officer Diaz conducted a plate query to access the vehicle's information. The individual in the car, later determined to be defendant, acknowledged Officer Diaz. A Dodge Charger was parked next to the Caprice with its engine running. Defendant spoke to the individual in the Charger, asking the individual for a CD. Officer Diaz conducted a plate query of the Charger as well. After obtaining the tags on both vehicles, Officer Diaz continued his patrol through the parking lot. Officer Diaz then noticed defendant exit the Caprice and walk away without a CD. The Charger also left the parking lot, heading in a different direction than defendant.
Officer Diaz received responses to his query on the Caprice and found that it belonged to Adonte Priester, and from seeing his photograph, Officer Diaz determined that Mr. Priester was not the person he saw in the vehicle. Officer Diaz returned to the Caprice, which was unlocked, and noticed that the steering column was damaged and that there "was a large void" with "wires sticking out" in the dash where an in-car radio belonged. Officer Diaz contacted another officer, who found the Charger at a gas station a couple of blocks away. Officer Diaz arrived at the gas station and found the driver of the Charger, whom he identified as Mr. Jenkins. Officer Diaz asked Mr. Jenkins to contact the man he was with in the apartment parking lot. Mr. Jenkins used his cell phone to call an individual identified on his cell phone as "Gold Mouf." Mr. Jenkins ended the call quickly, and Officer Diaz took the cell phone and began texting Gold Mouf, pretending to be Mr. Jenkins. Officer Diaz determined that Gold Mouf was on the campus of North Carolina A & T. Prior to leaving the gas station, Officer Diaz searched the Charger and found a small wire cutting tool. Officer Diaz left the gas station, and eventually spotted an individual he believed was Gold Mouf. Officer Diaz used Mr. Jenkins' cell phone to call Gold Mouf, and the individual answered his phone. The individual began running away, but Officer Diaz caught him and took him into custody. Officer Diaz identified the individual, defendant, as the same man he had seen in the Caprice. After defendant was taken into custody, he told Officer Diaz that he was in the car but that he did not take the radio. Officer Diaz searched defendant incident to arrest and found a small flashlight on a string, a pair of black gloves, and a medium-sized screwdriver.
Mr. Priester had seen his car around 10:00 p.m., before the break-in, and noted that it looked fine. However, the next day Mr. Priester noticed that his car door was unlocked. This was unusual, because Mr. Priester always locked his car. When Mr. Priester opened the door, he saw that his CD player was gone. Mr. Priester also realized that a pair of shoes was missing, that there was a small hole under the handle of the driver's door and that the steering wheel and ignition had been damaged. Mr. Priester did not know defendant and did not give anyone permission to go into his car while he was at work.
At the close of the State's evidence, defendant moved to dismiss the charge, and the court denied his motion. Defendant renewed his motion at the close of all evidence, which the court again denied. The jury found defendant guilty of breaking or entering a motor vehicle, and he thereafter entered a plea of guilty to attaining habitual felon status. The trial court sentenced defendant to a term of imprisonment for 41 to 62 months. Defendant appeals.
I. Motion to Dismiss
Defendant first argues that the trial court erred by denying his motion to dismiss. "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Fritsch,351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation omitted), cert. denied,531 U.S. 890, 148 L.Ed.2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith,300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose,339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert. denied,515 U.S. 1135, 132 L.Ed.2d 818 (1995). "This Court reviews the trial court's denial of a motion to dismiss de novo." State v. Smith,186 N.C.App. 57, 62, 650 S.E.2d 29, 33 (2007).
In the instant case, defendant was charged with breaking or entering a motor vehicle. The essential elements of this offense are: (1) a breaking or entering by defendant; (2) without consent; (3) into a motor vehicle; (4) "containing goods, freight, or anything of value[; and] (5) with the intent to commit any felony or larceny therein." State v. Chillo,208 N.C.App. 541, 546, 705 S.E.2d 394, 398 (2010).
Defendant only challenges the sufficiency of the evidence as to one element. Defendant argues that there was insufficient evidence to establish his intent to commit a "felony or larceny therein." Id.We disagree. "Larceny is a wrongful taking and carrying away of the personal property of another without his consent with intent to deprive the owner of his property and to appropriate it to the taker's use fraudulently." State v. Baskin,190 N.C.App. 102, 109, 660 S.E.2d 566, 572 (citation and quotation marks omitted), disc. review denied,362 N.C. 475, --- S.E.2d ---- (2008). We have repeatedly held that " [i]ntent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." Id.(citation and quotation marks omitted). "Intent to commit a felony may be inferred from the defendant's acts and conduct during the subject incident."State v. Lucas,--- N.C.App. ----, ----, 758 S.E.2d 672, 677 (2014).
The evidence was sufficient for the jury to infer that defendant had the requisite intent to commit larceny. First, Mr. Priester did not know defendant, and he did not give defendant permission to enter his car. Defendant was found in a stranger's car in the middle of the night, wearing dark clothing. When he was later apprehended, defendant was found in possession of a flashlight, a pair of black gloves, and a screwdriver-all items which could be used to break into a car. Most importantly, the screwdriver could have been used to puncture the hole below the handle of the driver's door. Contrary to defendant's suggestion, the jury could certainly infer that defendant was responsible for the hole, which was presumably used to unlock the door. Furthermore, a CD player had been removed from the Caprice, its steering column had been tampered with, and a pair of shoes had been taken from the car.
Defendant notes that neither the CD player nor the shoes were found in defendant's possession and that Officer Diaz did not see defendant remove anything from the car. However, the jury could still infer that the items were removed during the break-in of the car. Defendant also notes that the Caprice was left unattended for up to two days. But Mr. Priester testified that his car appeared to be fine when he left for work a few hours before the break-in. Thus, we are not persuaded by defendant's arguments, and we conclude that defendant's actions and the circumstances surrounding the break-in of the Caprice constituted evidence sufficient for the jury to infer that defendant had the requisite intent to commit larceny. Therefore, the trial court did not err in denying defendant's motion to dismiss.
II. Acting In Concert
Next, defendant contends that the trial court plainly erred in submitting to the jury an acting in concert instruction. Our Supreme Court has summarized the doctrine of acting in concert as follows:
If two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose or as a natural or probable consequence thereof.
State v. Mann,355 N.C. 294, 306, 560 S.E.2d 776, 784 (citation, quotation marks, ellipses, and brackets omitted), cert. denied,537 U.S. 1005, 154 L.Ed.2d 403 (2002). "For purposes of the doctrine, a person is constructively present during the commission of a crime if he or she is close enough to be able to render assistance if needed and to encourage the actual perpetration of the crime." Id.(citation, quotation marks, and brackets omitted). The trial court instructed the jury in accordance with this theory, and defendant failed to raise an objection. Nonetheless, defendant argues that the State failed to present substantial evidence that he acted in concert with the driver of the Charger in perpetrating the offense.
As defendant failed to object to the instruction at trial, he did not preserve any such error, and this Court's review is limited to whether the trial court's instruction amounted to plain error. SeeN.C.R.App. P. 10(a)(4). Plain error arises when the error is " 'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]' " State v. Odom,307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and quotation marks omitted). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Jordan,333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).
Defendant argues that the trial court's instruction on acting in concert amounts to plain error because the evidence was insufficient to convict him of breaking or entering a motor vehicle and that the instruction allowed the jury to convict him by impermissibly attributing the acts of the driver of the Charger to defendant. But even if the acting in concert instruction should not have been given, defendant cannot show that the result would have been different. Defendant's argument fails because the evidence noted above in the previous section does not include any of the actions of the driver of the Charger-namely presence at the scene of the break-in and possession of the wire cutter-but it was still sufficient to survive a motion to dismiss. This evidence was not only sufficient to send the case to the jury but also sufficient to convict defendant. Therefore, we find that the instruction on acting in concert was superfluous to the determination of whether defendant was guilty of the offense. Accordingly, defendant has failed to "convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." Id.
NO ERROR.
Judges DAVIS and INMAN concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from judgment entered 18 July 2014 by Judge R. Stuart Albright in Superior Court, Guilford County. Heard in the Court of Appeals 20 July 2015.